UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ALAF GETTER,

    Plaintiff,

vs.

JANE DOE #1, DR. HAGUES,
DR. WILLIAM A. BERK, DR.
NASEEM UKANI, and DR. DENISE
GRAY,

    Defendants.
_____/

Case No. 11-12021

HON. AVERN COHN

**MEMORANDUM AND ORDER
ADOPTING IN PART AND REJECTING IN PART REPORT AND
RECOMMENDATION (Doc. 22)
AND
DENYING GRAY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION (Doc. 18)
AND
DENYING WITHOUT PREJUDICE BERK'S MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT (Doc. 14)
AND
DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S
CLAIM AGAINST BERK, UKANI, AND GRAY
AND
DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT WITHIN (15) DAYS
AGAINST JANE DOE # 1 AND DR. HAGUES**

I. Introduction

This is a case concerning medical care. Plaintiff Michael Alaf Getter is a state prisoner currently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan. He is suing two groups of defendants. The first group consists of Jane Doe

#1[1] and Dr. Hagues,[2] whom plaintiff alleges are part of the Wayne County Jail Health Mental Services, Mental Health Department.  The second group consists of Dr. William A. Berk, Dr. Nassem Ukani,[3] and Dr. Denise Gray, all of whom plaintiff alleges are employed by the Detroit Medical Center at Detroit Receiving Hospital.  Broadly construed, plaintiff complains about the medical care he received while incarcerated at the Wayne County Jail and later at Detroit Receiving Hospital.

The matter was referred to a magistrate judge for pretrial proceedings.  Berk filed a motion to dismiss for lack of subject matter jurisdiction, for failure to state a claim, and for summary judgment (Doc. 14).  Gray filed a motion to dismiss for lack of subject matter jurisdiction (Doc. 18).  The magistrate judge issued a report and recommendation (MJRR), recommending that Gray's motion be denied and Berk's motion to dismiss be granted on the grounds that plaintiff has failed to state a claim.  The magistrate judge also recommends that the case be dismissed against <u>all</u> defendants <u>without prejudice</u>.  (Doc. 22).

Before the Court are plaintiff's objections to the MJRR (Doc. 26), to which Berk and Gray have filed responses (Docs. 27, 28).  For the reasons that follow, the MJRR will be adopted in part and rejected in part.  As will be explained, the Court agrees that plaintiff's complaint, fairly interpreted, asserts a claim under 42 U.S.C. § 1983 over

---

[1]Plaintiff alleges that Jane Doe #1 is a nurse at Wayne County Jail who he alleges gave him improper medication and/or over medicated him.  It is plaintiff's responsibility to identify this defendant so the U.S. Marshal may serve her.

[2]Hagues' first name does not appear in the record.

[3]Ukani has not been served.  The docket sheet shows that on June 22, 2011, a waiver of service was returned unexecuted with a notation that Ukani is no longer at the Detroit Medical Center address.

which the Court has jurisdiction. Thus, Gray's motion must be denied. However, the Court does not agree that dismissal of the complaint against all of the defendants for failure to state a claim, including the non-moving defendant Hagues, is appropriate.

Moreover, because the only plausible claim against Berk, Gray, and Ukani is a state law medical malpractice claim, which involves different factual circumstances, the Court declines to exercise supplemental jurisdiction over plaintiff's claim against these defendants. Plaintiff's claim against Berk, Gray, and Ukani will therefore be dismissed without prejudice. In light of this determination, Berk's motion to dismiss or for summary judgment will be denied without prejudice.

The case will continue based on a § 1983 denial of medical care claim against Jane Doe #1 and Hagues. Plaintiff shall file an amended complaint within fifteen (15) days against Jane Doe #1 and Hagues. Hagues has the right to file a dispositive motion based on the amended complaint.

## II. Background

The MJRR accurately sets forth the facts alleged in the complaint, which are repeated below.

> On March 9, 2008 Plaintiff was arrested and taken to the Wayne County Jail at 570 Clinton Street, Detroit, Mich. (Comp. ¶ 1.) At 7pm on that day, Plaintiff saw a Wayne County nurse at the jail. (Id. ¶ 2.) At that time, she gave Plaintiff the last Seroquel pill that he had brought from the police station. (Id.) During his interview with the nurse, he told her that he experienced back pain and that he took Seroquel for depression and because he heard voices. (Id. ¶ 4.) Plaintiff alleges that the nurse told him that she would put him on an 'on-call' list to see a doctor and/or psychiatrist the next day. (Id. ¶ 5.) Plaintiff also alleges that the nurse told him that he would receive a bottom bunk for sleeping. (Id.) Plaintiff then states that he was placed in a cell that evening, and that he did receive a bottom bunk. (Id. ¶ 6.)
> On March 10, 2008 Plaintiff states that no one from the Wayne County Jail Health Services called him out, so he started to complain to

3

the deputies, and asked to see a psychiatrist and doctor, to receive medications. (Compl. ¶ 7.)

Plaintiff claims that he did not receive any medication for approximately a week. (Compl. ¶ 8.) Around March 16, 2008 Plaintiff alleges he was moved to a different part of the jail and placed in a cell by himself. (Id. ¶ 9.) He states that he spoke with a male nurse who informed him that he would be put on the 'on-call' list to see the doctor on the follow day. (Id.) But on March 17, 2008 Plaintiff alleges that no one from Health Services called him or visited him. (Id. ¶ 10.)

Plaintiff informs that several days passed, and his lack of medication had resulted in him experiencing suicidal thoughts. (Compl. ¶ 11.) Plaintiff states that he again told a Wayne County Sheriff deputy that he had not received any of his psychiatric medications, and that he was thinking about harming himself. (Id.) As a result of his comments, Plaintiff states that he was moved to the psychiatric ward and placed on "suicide watch." (Id. at 12, 13.)

A day after being moved, Plaintiff states that he saw a doctor and was put back on his medication–due to depression and hearing voices. (Compl. ¶ 14.)

"Sometime after [being moved to the psychiatric ward,]" Plaintiff alleges that he saw a medical doctor, who prescribed Plaintiff pain medication for his back, and gave Plaintiff a medical bottom bunk detail. (Compl. ¶ 15.) But "[l]ater," Plaintiff alleges that a deputy moved Plaintiff to a top bunk. (Id. ¶ 16.) Plaintiff states that he informed that deputy that he had a medical detail to be on a bottom bunk, due to his back pain; Plaintiff alleges that the deputy said, "[t]hat don't mean nothing. Move to the top bunk or you're going to be placed in segregation." (Id. ¶ 18.) Plaintiff says that he followed orders because he did not want to be punished. (Id. ¶ 19.) Plaintiff states that he reported this incident to the Wayne County Sheriff sergeants and lieutenants, but that they did nothing. (Id. ¶ 20.) Plaintiff states that he also informed the medical treatment team, and that they did nothing, as well. (Id. ¶ 21).

Several days passed, Plaintiff alleges, and then he was seen by Dr. Hagues. (Compl. ¶ 22.) At that visit, Plaintiff states that Dr. Hagues changed his medications. (Id.) Several days then passed, Plaintiff states, and a nurse, Defendant Jane Doe #1, brought Plaintiff his medications, including his old medications.[4]3 (Id. ¶ 23.) Plaintiff alleges that he asked Jane Doe #1 whether the medications were his. (Id. ¶ 24.) Plaintiff states that Jane Doe #1 responded that the medications were his and that she told Plaintiff to take all of the medication. (Id.) Plaintiff maintains that he then took all of the medication at 8 or 9 p.m. and then fell asleep on his top bunk. (Id. ¶ 25.)

That night, on May 30, 2008, Plaintiff alleges that he fell out of the top bunk. (Compl. ¶ 26.) He states that his cell mate called for deputies, but that

---

[4]The Court, as did the magistrate judge, believes that this statement means that Jane Doe #1 gave Plaintiff his old and new medications, instead of just plaintiff's new medications.

4

none came. (Id. ¶ 27.) Plaintiff says that his cell mate asked him if he was okay, but Plaintiff states that he could not respond because he was in such severe pain and had had the 'wind' knocked out of him. (Id. ¶ 28.) The morning after, Plaintiff alleges that he asked his cell mate to call the deputies and tell them that Plaintiff needed to see the doctor. (Id. ¶29.) Plaintiff states that a deputy came, said that Plaintiff was not hurt because he was not crying, and then refused to call the nurse for several hours. (Id. ¶ 31.) Plaintiff states that several hours passed. (Id.) A nurse eventually visited Plaintiff, he states, and then took him to Wayne County Jail Health Services. (Id. ¶ 32.) There, Plaintiff states that a doctor examined him and gave him a shot. (Id. ¶ 33.)

Plaintiff then was transported to the Detroit Medical Center (DMC), Detroit Receiving Hospital. (Compl. ¶ 34.) At the DMC, Defendant Dr. William A Berk examined Plaintiff. (Id. ¶ 35) Plaintiff also had x-rays taken of his chest and right wrist. (Id. ¶ 36.) Plaintiff states that Dr. Berk discharged Plaintiff to back to Wayne County Sheriff's department lockup "in good condition." (Id. at 35.) Plaintiff further alleges that the DMC medical records show that the x-rays of Plaintiff's chest and wrist "were normal and showed no sign of a fracture." (Id. ¶37.)

Plaintiff also states that Drs. Naseem Ukani and Denise Gray also found that the x-rays did not show any fractures. (Compl. ¶ 38.) Plaintiff alleges that Dr. Beck told him that "nothing was broken." (Id. ¶ 39.)

After Plaintiff returned to the Wayne Count Jail and given another bottom bunk detail, he states that he was still having severe pain in his right wrist and right side of his body. (Compl. ¶ 41.) He maintains that he complained to the Wayne County deputies, nurses, and mental staff, but that they continued to do nothing. (Id.)

Plaintiff states that a "Deputy Mitchell" was finally sympathetic to Plaintiff and that Deputy Mitchell listened to Plaintiff's story and then immediately called the head nurse. (Compl. ¶ 47.) The head nurse examined Plaintiff's wrist and side, Plaintiff states, and then took Plaintiff to get x-rayed at Wayne County Jail Health Services. (Id. ¶¶ 48, 49.) Plaintiff states that he continued to complain about his wrist and side. (Id. ¶ 50.) Plaintiff then states that the doctor showed him the x-rays of his wrist and stated that both Plaintiff's wrist and rib were broken. (Id. ¶ 51.) Plaintiff alleges that the doctor then stated "I don't know why DMC staff didn't see the break in your right wrist and right rib," and then apologized to Plaintiff for waiting so long. (Id. ¶ 52.) Plaintiff then states that the doctor put a cast on his wrist, but that the doctor stated that he could not do anything for Plaintiff's rib. (Id.)

Plaintiff then states that he received several visits after his broken bones diagnosis. He claims that Jane Doe #1 visited him, asked him if he was mad at her, and stating that she was just following Dr. Hagues's orders. (Compl. ¶ 54.) Dr. Hagues then visited Plaintiff, and asked him if he was blaming her for his fall because of the medication she gave him. (Id. ¶ 55.) Plaintiff states that he stated that he did not blame Dr. Hagues, because he was intimated by her, but he felt that he was, in fact, over-medicated. (Id. ¶ 56.)

5

MJRR at p. 2-6.

Plaintiff then states that he is suing Hagues, and Jane Doe #1 for over-medicating him and not discontinuing his old medication. He also states that he is suing Berk, Ukani, and Gray for failing to diagnose his broken wrist and rib.

### III.  Review of MJRR

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id.  The requirement of de novo review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context.  Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 508 (6th Cir. 1991) ("It is arguable in this case that Howard's counsel did not file objections at all.... [I]t is hard to see how a district court reading [the 'objections'] would know what Howard thought the magistrate had done wrong.").

Moreover, the failure to file objections to the MJRR waives any further right to appeal.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th

Cir. 1987). Likewise, the failure to object to the MJRR releases the Court from its duty to independently review the motions. Thomas v. Arn, 474 U.S. 140, 149 (1985).

IV. Analysis[5]

A. Dismissal for Failure to State a Claim

1. § 1983 Claim

While plaintiff makes several objections,[6] the main thrust of his objections is the magistrate judge's recommendation that the entire complaint be dismissed[7] for failure to state a claim, contending he has stated a claim for relief under § 1983 and under state law medical malpractice.

As to a claim under § 1983, such a claim could only plausibly be asserted against Jane Doe #1 and Hagues, as they are the only defendants that could plausibly be subject to liability under § 1983, assuming they are state actors. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. See Flagg Bros. v.

---

[5]Berk and Gray both argue that plaintiff's objections are untimely. The Court disagrees. The Court granted plaintiff an extension of time to file objections on or before February 29, 2012. While plaintiff's objections are stamped as filed on March 1, 2012, they are signed and dated February 24, 2012. Under the prison mailbox rule, the objections are deemed filed on the date plaintiff signed and dated them.

[6]Berk and Gray also argue that the majority of plaintiff's objections merely rehash the arguments considered by the magistrate judge, raise new irrelevant arguments, and/or are nonsensical. While the Court appreciates Berk and Gray's responses, the Court has been able to discern the gravaman of plaintiff's objections.

[7]The magistrate judge recommends that the complaint be dismissed without prejudice. However, a dismissal for failure to state a claim under 12(b)(6) is generally a dismissal with prejudice. See White v. Saginaw County, 2008 WL 5273594, *2 (E.D. Mich. Dec. 17, 2008).

Brooks, 436 U.S. 149, 155-57 (1978); see also Harris v. Circleville, 583 F.3d 356, 364 (6th Cir. 2009). A pro se civil rights complaint is to be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Although not entirely clear, a reasonable interpretation based on the allegations in the complaint is that plaintiff was a pretrial detainee at the time of the relevant events. The complaint alleges that plaintiff was arrested on March 9, 2008 and all of the events took place from March to May of 2008, in all likelihood before plaintiff was convicted.[8]'s a pretrial detainee. Thus, while the magistrate judge analyzed plaintiff's § 1983 claim under the Eighth Amendment, his claim is properly are analyzed under the Fourteenth Amendment, not the Eighth Amendment. Regardless, the Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the same Eighth Amendment protections as convicted inmates. Miller v. Calhoun County, 408 F.3d 803, 812 (6th Cir. 2005).

A prison official violates an inmate's rights by exhibiting a deliberate indifference by intentionally denying or delaying access to medical care. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104. The deliberate indifference standard requires an inmate plaintiff to show that prison official defendants acted with a reckless disregard of a known risk of serious harm to the prisoner. See Farmer v. Brennan, 511 U.S. 825, 836 (1994). A plaintiff may establish deliberate

---

[8]Plaintiff alleges that he was sentenced in December 2008 which is further indication that he was a pretrial detainee at the relevant time.

8

indifference by a showing of grossly inadequate medical care. See Terrance v. Northville Regional Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish an objective component that a sufficiently serious deprivation has occurred. Id. at 2324. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In his complaint, plaintiff alleges that Jane Doe #1 and Hagues provided improper medical care in the form of giving plaintiff the incorrect amount and/or type of medications which plaintiff further says caused him to fall from his bunch and suffer injuries. The Court concludes that the claims against Jane Doe #1 and Hagues are not subject to summary dismissal for failure to state a claim at this time.[9] The Court notes that Hagues has been served and filed an answer raising several defenses, including failure to state a claim. See Doc. 25. Under these circumstances, including the fact

---

[9]The Court uses the term "summary dismissal" because Hagues, although served, has not moved for dismissal. However, the complaint was previously screened for summary dismissal and plaintiff was allowed to proceed in forma pauperis with service directed by the U.S. Marshal. (Doc. 5).

9

that plaintiff requested leave to amend, the better course is to allow plaintiff to file an amended complaint against Hagues and Jane Doe #1. Nothing in this decision prevents Hagues and/or Jane Doe #1, should she be identified, from moving to dismiss the amended complaint.

### 2. State Law Medical Malpractice Claim

As to plaintiff's claim against Berk, Gray, and Ukani, the Court agrees with Berk and Gray that plaintiff can only plausibly allege a state law medical malpractice claim against them. This is so because there are no allegations that they were under contract with the State of Michigan to provide medical care to detainees. See West v. Atkins, 487 U.S. 42 (1988).

In her motion to dismiss for lack of subject matter jurisdiction, Grey argued that if jurisdiction was found, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law medical malpractice claim. The magistrate judge did not address this argument. Rather, the magistrate judge concluded that because plaintiff failed to allege a § 1983 claim, the entire complaint should be dismissed.

In an action in which the district court has original jurisdiction, it may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is discretionary. City of Chicago v. International College of Surgeons, 522 U.S. 156, 172-73 (1977). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience,

fairness, and comity.'" Id. (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)).

"The federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that the 'relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional 'case.' " Id. at 164-65 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). The facts surrounding the state claim need only be loosely connected to the federal claim to form part of the same case or controversy. Blakely v. United States, 276 F.3d 853, 862 (6th Cir. 2002) (citing Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1299 (7th Cir. 1995)).

Here, while plaintiff's allegations against Berk, Grey, and Ukani pertain to medical care, they arise out of different set of events. Plaintiff's claims against these doctors are for failing to diagnose and treat his broken rib and wrist. His claims against Jane Doe # 1 and Hagues relate to improper medication. The only link between the two events is plaintiff's allegation that because of the improper medication, he fell out of the bunk bed and was injured and it was those injuries that the doctors at the Detroit Medical Center failed to diagnose. This is an insufficient nexus for supplemental jurisdiction. Moreover, interests of comity weigh against the exercise of supplemental jurisdiction given the procedural requirements in Michigan for filing a medical malpractice claim. As such, plaintiff's claims against Berk, Grey, and Ukani will be dismissed without prejudice to

11

plaintiff filing a claim against them in the appropriate state court.[10] In light of this determination, Berk's motion to dismiss or for summary judgment is denied without prejudice.

## VI. Conclusion

For the reasons stated above, the MJRR is ADOPTED IN PART AND REJECTED IN PART.

Grey's motion to dismiss for lack of subject matter jurisdiction is DENIED.

Berk's motion to dismiss or for summary judgment is DENIED WITHOUT PREJUDICE.

The Court DECLINES to exercise supplemental jurisdiction over plaintiff's claim against Berk, Ukani, and Gray. Plaintiff's claim against these defendants is DISMISSED WITHOUT PREJUDICE.

Plaintiff shall file an amended complaint within fifteen (15) days against Hagues and Jane Doe #1.

SO ORDERED.

Dated: March 13, 2012      s/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 13, 2012, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager, (313) 234-5160

---

[10] As Berk argues in his motion to dismiss, plaintiff has not complied with the procedural requirements of a medical malpractice case. Moreover, Berk has argued that plaintiff has failed to comply with the two year statute of limitations. The Court need not address these arguments.