# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHAEL ALAF GETTER,**

          **Plaintiff,**               **CIVIL ACTION NO. 11-CV-12021**

      **vs.**                      **DISTRICT JUDGE AVERN COHN**

                                     **MAGISTRATE JUDGE MONA K. MAJZOUB**

**JANE DOE #1, and DR. HAGUES,**

          **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This is a *pro se* action filed by Plaintiff Michael Getter, a Michigan state prisoner, alleging civil-rights violations under 42 U.S.C. § 1983. (Docket no. 1.) The Court has previously dismissed Plaintiff's claims against three additional defendants, leaving only Plaintiff's claims against Defendants Jane Doe (a nurse employed at the Wayne County Jail at the time of the incident) and Dr. M. Hagues (a psychiatrist at the Wayne County Jail). (See docket no. 55.) Before the Court is Defendant Hagues's Motion for Summary Judgment. (Docket no. 56.) Plaintiff filed an affidavit in response to Defendant's Motion. (Docket no. 57.) The Court then ordered Defendant to file a supplemental briefing (docket no. 61), which she submitted in a timely manner (docket no. 62).[1] All pretrial matters have been referred to the undersigned for action. (Docket no. 10). The Court has

---

[1] Defendant's initial brief cited to Plaintiff's medical record as a whole in support of her Motion. (*See* docket no. 11 at 8, 11-12.) Rather than attempt to guess at what portions of the 165-page document on which Defendant intended to rely, the Court ordered Defendant to supplement her brief with citations to specific pages of the record. (Docket no. 61.)

reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[2]

## I.    Recommendation

For the reasons that follow, the Court recommends granting Defendant's Motion for Summary Judgment [56].  Additionally, the Court recommends dismissing Plaintiff's claims against Defendant Jane Doe without prejudice for failure to properly serve Defendant Doe under Fed. R. Civ. P. 4(m).  Thus, the Court recommends dismissing this matter in its entirety.

## II.    Report

### A.    Facts

On March 9, 2008, Plaintiff was arrested for armed robbery and was confined at the Wayne County Jail.  During intake and screening, he was given a dose of Seroquel (which he brought with him) and was questioned about his physical and mental health.  Plaintiff informed the intake nurse that he was on medication for back pain, severe depression, and auditory hallucinations.  Plaintiff was provided a bottom bunk and was told he would be placed on a "callout list" to see a doctor. (Docket no. 55 at 3.)

Plaintiff alleges that "several days" after March 17, 2008, he still had not seen a doctor and had not been provided with any medication.  He began to feel suicidal, so he told officers that he was contemplating hurting himself.  Plaintiff was transferred to a psychiatric ward and placed on a suicide watch.  One day later, Plaintiff alleges, he was put back on his medications for auditory hallucinations and depression.  (*Id.* at 4.)  Plaintiff alleges that "sometime later," he was given pain medication for his back and a "bottom bunk detail."  (*Id.* at 4-5.)  One of the officers then moved

---

[2]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff to a top bunk and told Plaintiff that he would be placed in segregation if he did not move to the top bunk.  Plaintiff claims that none of the supervisors at the jail would help him with the "bunk situation."  (*Id.* at 5.)

    "[A]fter several [more] days passed," Defendant Hagues examined Plaintiff.  As Plaintiff describes it, Defendant Hagues "initiated a psychiatric medication change." (*Id.*)  Then, on or about May 30, 2008, Defendant Jane Doe #1 gave Plaintiff what he calls his "new medications" and his "old medications."  (*Id.*)  Plaintiff alleges that he took the pills around 8:00 p.m. and that around 9:00 p.m., he fell asleep on his assigned top bunk.  (*Id.* at 5-6.)  That night, Plaintiff fell out of bed and injured his wrist and ribs.  (*Id.* at 6-7.)  Several days later, Plaintiff spoke with Jane Doe #1 who said that she gave plaintiff the medication because "she was just following defendant Hages' (sic) orders."  (*Id.* at 9.)  Plaintiff later he told Hagues that he did not blame her for his injuries, but he now alleges that he lied because he was afraid of retaliation.[3]  (*Id.*)  With regard to Defendant Hagues, Plaintiff contends that she acted with deliberate indifference to his serious medical needs when she overmedicated him on May 30, 2008.  (*See id.* at 10-11.)

    A review of Plaintiff's medical record, submitted with Defendant's Motion for Summary Judgment, shows that Hagues first met with Plaintiff on April 29, 2008, approximately one month before Defendant was allegedly overmedicated.  During this initial examination, Plaintiff stated that he suffered from nightmares and increased appetite.  He had previously been diagnosed with mental-health and substance-abuse problems while at Harbor Oaks Hospital, and he had been prescribed

---

[3]Plaintiff also alleges several acts of improper medical care committed by various doctors at the jail and at the Detroit Medical Center after his fall.  (*See* docket no. 55 at 6-9.)  The Court has omitted these allegations from this Report and Recommendation as they do not relate to Defendant Hagues or the instant Motion.

Haldol, Seroquel, Zyprexa, Cymbalta, Lyrica, and Ativan.  Plaintiff also indicated that he had taken Zoloft.  (Docket no. 56-1 at 159.)

Plaintiff told Hagues that the medications he had been prescribed in the past had helped, but the medications had been changed when he left Harbor Oaks, and the improvement stopped.  (*Id.* at 158-59.)  Noting the past improvement, Hagues determined that she "[would] continue Celexa," a Selective Serotonin Reuptake Inhibitor, similar to Zoloft.  (Docket no. 62 at 4); *see also* SSRI Medications, Understand and Cure, *available at* http://www.understand-andcure-anxietyattacks-panicattacks-depression.com/ssri.html (list of SSRI's by brand name).  Celexa had been prescribed for Plaintiff by other staff at the jail.  (*See* docket no. 56-1 at 30.)  Hagues noted that Plaintiff had not tried any anti-epileptic medications in the past and that he was "set against Depakote/Tegretol" due to possible liver damage.  (*Id.* at 158.)  She also noted that Plaintiff had "agreed to Topomax," despite possible kidney damage, and that he "also agreed to Invega," an antipsychotic, and a trial of Remeron, to "promote sleep and [decrease] nightmares."  (*Id.*)  Later that day, Hagues issued an order "[discontinuing] Zyprexa and Benedryl," which had been prescribed to Plaintiff along with Celexa by another doctor at the jail (*see id.* at 30) and "add[ing] Invega . . . Remeron . . . and Topomax."  (*Id.* at 27.)  Dr. Hagues's next order, issued the following day, indicates that Plaintiff is to have a "Bottom Bunk" for medical reasons.  (*Id.*)

Two weeks later, on May 14, 2008, Plaintiff was seen by Hagues on an urgent basis; a social worker had recommended that he be transferred to the general population, and he was not responding well to the Remeron prescription.  (*See id.* at 155.)  Hagues noted that Plaintiff should not be transferred to the general population because "he still ha[d] benefit to derive" from his psychological care in the mental health housing unit.  (*Id.* at 155-56.)  Hagues ordered that his his

Remeron prescription be discontinued and that he be started on Klonopin. (*Id.* at 27.) Hagues also made a follow-up appointment for Plaintiff, which she scheduled for June 11, 2008. (*Id.* at 26.) Two days later, on May 16, 2008, Plaintiff saw a different doctor for complaints of "low back pain." This non-party doctor prescriped Nevrontron, Flexeril, Naproxen, and Neosporen. (*Id.*) Plaintiff's medical records indicate that he was not seen again until May 31, 2008, the day after his fall.

**B.     Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

5

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

C.    **Analysis**

1.    **Defendant Hagues's Motion to Dismiss**

To prevail on an Eighth Amendment claim for lack of medical care, a plaintiff must show "deliberate indifference to [the] serious medical needs of prisoners [that] constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  An Eighth Amendment deliberate-indifference claim requires proof of both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, Plaintiff must demonstrate the existence of a serious medical need.  *Id.* at 835.  A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted).  But not every ailment diagnosed by a physician is sufficiently serious.

6

"A serious ailment requires immediate attention or is potentially life-threatening: 'A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Williams v. Mustafa*, No. 08-10197, 2009 WL 483134, at *15 (E.D. Mich. Feb. 24, 2009) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

To satisfy the subjective component of a deliberate-indifference claim, Plaintiff must demonstrate that the Defendant possessed a sufficiently culpable state of mind in denying medical care; Plaintiff must show a reckless disregard of a substantial risk of serious harm. *Farmer*, 511 U.S. at 835-36. Mere negligent inattention to a prisoner's request for assistance, or even gross negligence, is insufficient, *Davidson v. Cannon*, 474 U.S. 344 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Moreover, a mere difference of opinion between a prisoner and a doctor with respect to diagnosis and treatment does not rise to the level of a constitutional deprivation. *See id.* at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). There must be a knowing failure or refusal to provide urgently needed medical care, the consummate effect of which causes a residual injury that could have been prevented with timely attention. Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

Here, even viewing the record in a light most favorable to Plaintiff, he has failed to demonstrate that his medical needs were sufficiently serious to support the objective component of his claims, and he has failed to demonstrate that Hagues showed a reckless disregard of a substantial risk of serious harm. To the contrary, Plaintiff's medical records indicate that Hagues attempted to

7

provide Plaintiff with proper care.

Plaintiff contends that he was overmedicated, which caused him to fall from his top bunk on May 30, 2008. Plaintiff asserts that he was given his old medication *and* his new medication. But Plaintiff's medical records show that on April 29, 2008, Hagues ordered that Plaintiff's Zyprexa and Benedryl prescriptions be *discontinued*, that his Celexa prescription be continued, and that prescriptions for Invega, Remeron, and Topomax be added. (Docket no. 56-1 at 27.) And on May 14, 2008, Hagues ordered that Plaintiff's Remeron prescription be *discontinued* and that a prescription for Klonopin be added. (*Id.*) Even accepting Plaintiff's assertion that he was given his old and new medications by the staff member referred to as "Jane Doe #1" as true, Plaintiff's medical records show that such an order was not given by Hagues. Moreover, to the extent that Plaintiff's injury was caused by his assignment to a top bunk, such an assignment was *against* Hagues's orders. (*See id.*) Plaintiff's medical records unequivocally show an absence of evidence to support Plaintiff's deliberate-indifference claims. There is no genuine dispute of material fact and, therefore, the Court recommends granting Defendant Hagues's Motion for Summary Judgment.

### 2.    Plaintiff's Failure to Serve Defendant Jane Doe

"An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." (*Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422 at *2 (E.D. Mich. Aug. 23, 2007) (citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D. Mass. 1994)). Defendants must be served within 120 days of filing the complaint. Fed. R. Civ. P. 4(m). Plaintiff filed his Complaint on May 9, 2011, and filed his Amended Complaint on September 18, 2012. (Docket nos. 1 and 55.) To date, Defendant Jane Doe has not been identified or served.

8

Thus, the Court recommends that Plaintiff's complaint against Defendant Doe be dismissed without prejudice.  This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

**D.    Conclusion**

For the above-stated reasons, the Court recommends granting Defendant's Motion for Summary Judgment [56] and that Plaintiff's Complaint against Defendant Jane Doe be dismissed pursuant to Fed. R. Civ. P. 4(m).  Thus, the Court recommends dismissing this matter in its entirety.

**III.   Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1,"

9

"Response to Objection #2," etc.

Dated: June 10, 2013                    s/ Mona K. Majzoub                          
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

     I hereby certify that a copy of this Report and Recommendation was served upon Michael Getter and Counsel of Record on this date.

Dated: June 10, 2013                    s/ Lisa C. Bartlett
                                         Case Manager

10